UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 12-CR-10266-NMG |
| | ) | |
| DARRELL GRAHAM | ) | |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States submits this sentencing memorandum to address issues involving the applicable sentencing guidelines and to support its recommendation that the defendant be sentenced to serve 15 years in prison, the maximum sentence allowed under the plea agreement tendered in this case. Not only does the pre-sentence report ("PSR") reflect a lifetime spent violating the law, the defendant's conduct in exploiting the vulnerabilities of a 19-year-old girl through psychological manipulation and fear to prostitute herself for his sole benefit deserves a severe sentence.

## I. SENTENCING GUIDELINES

### A. The Cross-Reference for Placing the Victim in Fear is Correctly Applied

Although the defendant pled guilty to three counts of violating the Mann Act, 18 U.S.C. § 2421, the applicable guideline, § 2G1.1, has a cross-reference to § 2A3.1 (Criminal Sexual Abuse) if the offense involved conduct described in 18 U.S.C. § 2242. Relevant conduct under 18 U.S.C. § 2242 includes causing a person to engage in a sexual act by "threatening or placing the victim in fear (other than by threatening or placing the victim in fear that any person will be subject to death, serious bodily injury, or kidnapping.)" U.S.S.G. § 2G1.1 cmt. N. 4(B)(i). Under § 2A3.1, the base offense level is 30. Despite the defendant's objections, the PSR correctly determined this base offense level.

Essentially, the defendant argues that fear of his infliction of physical harm did not cause

the victim either to initially engage in prostitution for the defendant or to return to the defendant's control after the first time she escaped. The defendant cites the victim's voluntary initial decision to go with him from the shelter to be a prostitute, her opportunity to use a phone, text messages that show the was defendant was not always nearby, and the victim's prostitution for a brief period while she was away from the defendant as evidence of such lack of fear as the motivating factor.[1] The defendant's simplistic argument is wrong on a number of levels.

First, in most typical sex trafficking cases, all of those factors are present yet they do not *per se* undermine the overall sufficiency of evidence of fear and coercion. See e.g., United States v. Bell, __F.3d__, 2014 WL 3805454 (C.A. 8 Iowa) (despite the defendant's initial non-threatening courting of victims, their ability to escape, and their other prostitution activities, evidence of threats, coercion and force sufficient to uphold conviction under 18 U.S.C. § 1591).

Second, the PSR reflects that not only was there an implicit threat of physical harm to the victim, but that there were actual threats and incidents of physical violence directed at the victim. After the victim arranged her first escape from the defendant, the defendant left voice mails that she was a "walking target" and that anybody he knew was going to "take her out" if they saw her. PSR ¶ 18. See also Grand Jury Testimony of [Victim], attached as Exhibit 1, at 35. That the victim took these threats seriously is borne out by the fact that she went to the Framingham Police where Officer David Loureiro listened to the angry and threatening calls. PSR ¶ 19. See also Grand Jury Testimony of Officer David Loureiro, attached as Exhibit 2, at 11-12,15. And that fact that the victim needed to arrange her first escape by way of a ruse with a friend helping

[1] Of course, in applying this cross-reference in this context, the issue is not whether the defendant caused the victim to engage in a specific sexual act or, for that matter, engage in prostitution at all. Rather, the issue is whether the defendant used fear to cause her to remain in his employ where that meant performing sexual acts for his financial benefit. See United States v. Madison, 477 F.3d 1312, 1317 (11th Cir. 2007).

her corroborates that she did not feel free to leave the defendant's control. PSR ¶ 17.

Moreover, there were two specific instances of physical violence inflicted on the victim. First, the defendant slapped the victim in the face in Vermont coupled with the warning that he no longer would be "using kid gloves" on her. PSR ¶ 22. Then in New Jersey, the defendant punched the victim in the face, and reminded her that "you're not a free bitch", and raped her. PSR ¶ 23, Grand Jury Testimony of [Victim] at 44-45.[2] Again, fearing the defendant, the victim enlisted the aid of a client to help her escape. That client corroborates that the victim looked beaten around the face and was acting "scared and paranoid." PSR ¶ 24. See also Grand Jury Testimony of [Client], attached as Exhibit 3, at 15-16.

Third, case law applying the definition of "threatening or placing a person in fear" under 18 U.S.C. § 2242 shows that courts have interpreted fear under the statute very broadly and not restricted to fear of bodily harm**.** See United States v. Gavin, 959 F.2d 788, 791 (9th Cir. 1992)("[a] reasonable construction of § 2242(1) is that it encompasses all fears of harm to oneself or another other than death, serious bodily injury, or kidnapping…. The possible range of "harm," like the possible range of "fear," is very large…"); United States v. Monsalve, 342 F. App'x 451 (11th Cir. 2009)(threats that if victim went to police she would be deported sufficient threat of fear); United States v. Fish, 295 F. App'x 302, 305 (10th Cir. 2008) (finding that the defendant's threat to the thirteen year old victim that he would leave him on the side of the road far from home caused sufficient fear under § 2242).

Here, the defendant also utilized tricks of the pimp-trade besides physical fear to coerce

[2] Because the victim arranged her final escape from the defendant after this last act of physical abuse, the defendant argues that his violence did not "cause" her to engage in prostitution. This argument is fallacious because the actual violence serves to illustrate the reasonable fear of the victim of the defendant's potential for violence.

the victim to continue to prostitute herself for his benefit. He exerted complete control of her life, first by having her cut off all contact with her family and friends. PSR ¶ 16. He did not permit her to keep any money or identification to further increase her dependence on him. PSR ¶ 15. And he used psychological manipulation to make the victim feel that she had no other choice but prostitution, convincing her that she would never be anything besides a "ho," because "you can't turn a 'ho' into a housewife" or "go back to being a normal girl." PSR ¶ 21.

At least one court has acknowledged that this type of utter control is an important consideration in evaluating the degree of fear sufficient to cause a victim to engage in sexual acts under 18 U.S.C. § 2241. In United States v. Johns, 15 F.3d 740 (8th Cir. 1994), the defendant, a spiritual tribal elder, was convicted under this statute for sexually abusing a girl in his household during her teenage years. Although there was evidence of some physical violence, the court focused on the defendant's control of the victim in generating the fear used to ensure the victim's compliance:

> Johns also fails to acknowledge the fear generated by his dominance of every aspect of C.D.'s life over a period of years: choosing her clothes, isolating her from her friends and her biological father, controlling her activities, pulling her out of school to engage in sex, constantly changing household rules and becoming enraged when they were not followed.

15 F.3d at 742. The court recognized that these factors contributed to inspiring the fear that caused the victim to engage in sexual acts with the defendant. Id. at 743.

Thus, whether the fear generated by the defendant's threats and actual physical violence alone caused the victim to continue to prostitute herself for defendant's benefit, or whether they are evaluated in conjunction with the defendant's psychological weapons designed to make the victim fear she had no reasonable alternatives, the PSR correctly applied the cross-reference to criminal sexual abuse and its Base Offense Level of 30.

**B. The Vulnerable Victim Enhancement Should Apply**

The defendant's offense level should be increased by two levels pursuant to USSG § 3A1.1(b)(1) because the defendant knew or should have known that the victim of his offenses was a vulnerable victim.

As detailed in the PSR, the victim had been living in foster care and group homes since she was 12 or 13 years old. When she met the defendant, the victim was 19 and staying in a shelter. She had a history of emotional issues and alcohol abuse, and she told the defendant about growing up rough and not having anyone who cared about her. The defendant told her he would take care of her, and help her get the things she wanted in life. Based on the defendant's representations, the victim thought she would be making money if she worked for the defendant. Instead, the defendant took the victim's birth certificate, ID and Social Security card, and prostituted her in several states over a two-month period while restricting her food intake, keeping the money she earned for himself, restricting her contact with family and friends, threatening her with physical harm and finally assaulting her. Essentially the defendant held the victim emotionally captive such that she believed she could not simply walk away from the defendant. The defendant left the victim so broken and fearful that when she finally worked up the courage to escape from him, she went back to the defendant within days because she felt she had no other option.

A two-level enhancement is warranted under Section 3A1.1(b)(1) where the defendant knew or should have known that a victim of the offense was a vulnerable victim. A "vulnerable victim" for purposes of Section 3A1.1(b)(1) means "a person (A) who is a victim of the offense of conviction and any [relevant] conduct . . .; and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to criminal conduct."

See USSG 3A1.1, Application Note 2. This guideline "is primarily concerned with the impaired capacity of the victim to detect or prevent the crime, rather than the quantity of the harm suffered by the victim." United States v. Gill, 99 F.3d 484, 486 (1st Cir. 1996). The question is whether "a particular victim was less likely to thwart the crime . . ." Id.

As detailed in the PSR, while the defendant pled guilty to three Mann Act violations, the cross-reference in § 2G1.1 applies because the victim prostituted herself for the defendant out of fear. See PSR ¶ 31. Because it is included as relevant conduct, all of the actions of the defendant which caused the victim to be in fear must be considered when determining the applicability of the vulnerable victim enhancement. See United States v. Souza, 749 F.3d 74, 86 (1st Cir. 2014) ("To come within the guidelines definition, one need not be a victim of the charged offense so long as one is a victim of the defendant's other relevant conduct.").

In a typical Mann Act case, the sentencing court's task is "to evaluate the evidence to determine what, if anything, was special about [the victim] that would distinguish [her] from typical individuals that would fall prey to a Mann Act violator." United States v. Sabatino, 943 F. 2d 94, 103 (1st Cir. 1991). In the First Circuit, economic dependence, without more, may not support an enhancement under Section 3A1.1(b)(1) in a Mann Act case. Id. (rejecting vulnerable victim enhancement where district court found only that many prostitutes employed by defendants were single, teenage mothers in need of jobs).

However, the evidence in this case is not limited to the victim's economic dependence on the defendant, and in fact the victim's economic dependence played a minor role in comparison to her emotional dependence on and fear of the defendant as detailed in the PSR. The defendant chose the victim because her family history, mental state and economic circumstances made her particularly vulnerable to his manipulation and coercion, and set the victim apart from typical

individuals who would fall prey to Mann Act violators, warranting the two-level increase under Section 3A1.1(b)(1). See, e.g., United States v. Willoughy, 742 F.3d 229, 241 (6th Cir. 2014) (in prosecution under 18 U.S.C. § 1591, vulnerable victim enhancement applied where victim was homeless runaway with history of abuse and neglect); United States v. Williams, 428 Fed.Appx. 134, 142 n.8 (3d Cir. 2011) (vulnerable victim enhancement applied where pimps purposely sought "lost girls," impregnating some recruits to increase dependence on pimps, "thus permitting the inference that the pimps themselves distinguished between ordinarily vulnerable and particularly vulnerable victims"); United States v. Jimenez-Calderon, 183 Fed.Appx. 274, 279-80 (3d Cir. 2006) (vulnerable victim enhancement applied where girls were young, uneducated, naïve and from extremely impoverished families; "no question that there was a nexus between victims' vulnerability and the ultimate success of the crime).

After learning of the victim's unstable and untethered past and present life, the defendant targeted her because she was less likely to resist his control as her pimp, and thus this enhancement should apply.

**C. The Defendant's Criminal History Also Justifies a 15 Year Sentence**

In addition to the nature and circumstances of the offense, the defendant's long and serious criminal history supports the maximum sentence under the plea agreement. Whether viewed as an upward departure under USSG § 4A1.3 or grounds for a variance from the guidelines, the longevity and nature of the defendant's criminal career warrant a severe sentence. Although the PSR computes the defendant's criminal history as a Category IV with nine points, numerous other serious convictions reflect a life of crime and little likelihood of rehabilitation.

For example, the defendant was first convicted of pimping when he was only 18 years old in 1981. No less than eight convictions are uncounted as time-barred, including convictions for

unarmed robbery (2) and trafficking or possession with intent to distribute cocaine (4). The defendant also was arrested for unlawful conduct similar to the instant offense in 1981 in Phoenix and 2009 in Somerville. See PSR ¶¶ 42-47,79. These uncounted offenses show that that "defendant's criminal history category substantially underrepresents the seriousness of the defendant's criminal history or the likelihood that defendant will commit other crimes." USSG § 4A1.3. See United States v. Aymelek, 926 F.2d 64, 73 (1st Cir. 1991)(where seven prior convictions not eligible for criminal history score because they occurred more than ten years ago, court noted that these convictions could be considered where prior convictions "were distinguished by their numerosity and dangerousness.") Thus, this Court should consider upwardly departing to a Criminal History Category V.

Alternatively, this same criminal record, taken in conjunction with the facts and circumstances of the defendant's exploitive and violent control of the victim for his financial benefit, should be counted by the Court in reaching the most appropriately severe sentence envisioned by the plea agreement.

## II. RESTITUTION

Under the plea agreement tendered to the Court, the agreed disposition contains a provision for restitution as determined by the Court at sentencing.[3] In an order of restitution, "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). Here, the amount of restitution should be based on the

---

[3] Although restitution is not mandatory either under 18 U.S.C. §§ 1593 or 3663A because the defendant pleaded guilty only to the Mann Act charges under 18 U.S.C. § 2421, pursuant to 18 U.S.C. § 3663(a)(3), a court may order restitution in any criminal case to the extent agreed to by the parties in a plea agreement.

income the defendant derived from the victim's forced prostitution plus any specific losses suffered by the victim. Based on a reasonable estimate of the number (360) and charged price ($150) of the commercial sex acts the victim performed for the defendant's benefit, the victim should receive at least $54,000. See United States v. Cortes-Castro, 511 Fed. Appx. 511, 2013 WL 828097 (C.A. 11 Fla.) (using this formula and rejecting argument as "preposterous" that this rewards the victims for their illegal activities); United States v. Mammedov, 304 Fed. Appx. 922, 2008 WL 5411080 (C.A. 2 N.Y.)("even if the victims engaged in illegal conduct, the women involved here were still Mammedov's victims). Other specific losses include: $2,607, which is the amount of the proceeds from a Social Security check that the defendant forced the victim to cash and give to him while she was prostituting herself for him; $2,046, which is the amount of the current outstanding bill from AT&T for the phone which the victim bought but the defendant had the victim use for prostitution; and $50, which is the amount of the medical bill the victim incurred for treatment after the defendant assaulted her in New Jersey.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By: */s/ S. Theodore Merritt*
KRISTINA E. BARCLAY
S. THEODORE MERRITT
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I, S. Theodore Merritt, Assistant United States Attorney, do hereby certify that this document, was filed on the above date through the ECF system which sends copies electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this date.

*/s/ S. Theodore Merritt*
S. THEODORE MERRITT
Assistant U.S. Attorney